IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,059

In the Matter of PETER EDWARD GOSS,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 5, 2014. One-month suspension.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and *Duston J. Slinkard*, Deputy Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Peter Edward Goss*, respondent, argued the cause pro se.

*Per Curiam*:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Peter Edward Goss, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 2006.

On May 7, 2014, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on May 16, 2014. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on June 4, 2014, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 4.1 (2013 Kan. Ct. R. Annot. 617) (truthfulness in statements to others); and 8.4(c) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct involving misrepresentation).

1

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"8.     J.M. retained the respondent to represent him in a personal injury case against the United States government, under the federal tort claims act, for injuries suffered in a motor vehicle accident. On July 24, 2012, the respondent filed an action in the United States District Court for the District of Kansas, case number 12-2469-JAR.

"9.     Under 28 U.S.C. § 2678, the respondent's attorney fee could not exceed 25%.

'No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of . . . any settlement made pursuant to section 2677 of this title, . . .

'Any attorney who charges, demands, receives, or collects for services rendered in connection with such claim any amount in excess of that allowed under this section, if recovery be had, shall be fined not more than $2,000 or imprisoned not more than one year, or both.'

28 U.S.C. § 2678.

"10.     The parties submitted to mediation. As a result of the mediation, the respondent and counsel for the United States agreed to settle the case for $416,050.15. Under 28 U.S.C. § 2677, on January 16, 2013, the parties executed a settlement agreement.

2

"11.     The United States agreed to pay the settlement amount to settle and satisfy:

'any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof, resulting, and to result, from the subject matter of this settlement . . . .'

Further, the settlement agreement referenced 28 U.S.C. § 2678, the restriction of attorney fees in federal tort claims litigation.

"12.     On January 22, 2013, counsel for the United States filed a status report informing the court that the case had settled.

"13.     On January 23, 2013, the court filed an order administratively closing the case and directing the parties to file a stipulation of dismissal by March 25, 2013. Thereafter, on February 27, 2013, the parties filed a joint stipulation of dismissal with prejudice.

"14.     Sapp Brothers Voluntary Employees Beneficiary Association Trust Plan (hereinafter 'Sapp Bros.') held a lien on the settlement amount for the payment of medical expenses incurred by J.M. as a result of the accident.

"15.     More than 2 months later, on March 28, 2013, the respondent left a voice mail message for counsel for Sapp Bros. In the message, the respondent stated:

'. . . I've got a settlement offer that that has an expiration date on it and and umm my client is obviously not willing to accept anything prior to knowing what any lien amounts gonna be and I want to talk to you a little bit about that. . . .'

3

"16.     On April 2, 2013, the respondent sent counsel for Sapp Bros. an electronic mail message.  In the electronic mail message, the respondent stated:

'The proposed settlement on this matter is for 416,050.15. I propose splitting the money three ways. 1/3 to [J.M.], 1/3 to Sapp Brothers for reimbursement of their medical expenses paid and 1/3 to my firm for reimbursement of my out of pocket expenses and attorneys' fees. As we discussed on the phone, I have approximately $30,000 in out of pocket expenses for litigating the case including expert fees. Typically, I get my expenses plus 40% of the total expenses [*sic*]. With this proposal, I am reducing my fee to 25%, which is more than fair in this scenario. I ask that Sapp brothers [*sic*] make this concession to get the case resolved. Please let me know as soon as possible. Thanks,'

"17.     In addition, in an attempt to have the lien reduced, the respondent spoke by telephone with Daiana Williams, case manager for the recovery department of The Phia Group. During his telephone conversation with Ms. Williams, the respondent stated that if the lien holder was unwilling to compromise he would settle the case and interplead the funds or continue with litigation and proceed to trial against the United States, both alternatives would require the United States to incur significant attorneys fees.

"18.     Counsel for Sapp Bros. discovered that the case had already settled. On April 8, 2013, counsel for Sapp Bros. then contacted counsel for the United States and obtained a copy of the settlement agreement.

"19.     On April 11, 2013, counsel for Sapp Bros. wrote to the respondent. The letter provided, in pertinent part, as follows:

'Since our discussion, it has now come to my attention that, contrary to your representations, it appears that settlement was actually reached in January of 2013, a Settlement Agreement was entered into and executed by you on January 16, 2013, and the underlying lawsuit

4

was already dismissed with prejudice on February 27, 2013. The public records reflecting this information are attached. If my understanding is incorrect in anyway [*sic*], please provide an explanation to me in writing.

'Because it appears now that my client has not been negotiated with in good faith, the Plan is not willing to reduce its lien or right to full reimbursement/subrogation. Accordingly, my client requires full reimbursement in the amount of $228,671.83.

'We assume the settlement proceeds remain deposited in your law firm's trust account and that no disbursements will be made from the Plan's portion of the settlement funds. Please notify me in writing immediately if the funds are being held elsewhere. We expect you to maintain the full amount of Sapp Bros.' lien in your account, but you may release amounts beyond the lien portion. *Kansas Rule of Professional Conduct* 1.15.

'Accordingly, please forward a check made payable to "Sapp Bros." for the full reimbursement/subrogation amount to my address within seven (7) days of the date of this letter.

'We further request that any other communications regarding this matter be provided in writing via letter to the undersigned.'

"20.     On April 16, 2013, the respondent contacted counsel for Sapp Bros. and requested an itemization of the lien amount. As a result of the respondent's request, Sapp Bros. reviewed the lien amount and discovered that it had received a refund on one of the claims, so the lien amount was reduced to $212,642.21.

"21.     On April 24, 2013, the respondent forwarded Sapp Bros. a check in the amount of $212,642.21.

"22.     Based upon the respondent's admissions and stipulations in his answer and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 4.1(a) and KRPC 8.4(c), as detailed below.

"KRPC 4.1

"23.     KRPC 4.1(a) provides that '[i]n the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person.' The respondent violated KRPC 4.1(a) when he made false statements of material fact in the voice mail message, the electronic mail message, and during a telephone conversation. The respondent made false statements when he stated (1) the settlement offer had an expiration date on it, (2) J.M. was not willing to accept anything prior to knowing what the lien would be, (3) the settlement was a 'proposed settlement,' (4) he was reducing his attorney fees from 40% to 25%, (5) if Sapp Bros. was unwilling to reduce the lien he would settle the case and interplead the funds, and (6) if Sapp Bros. was unwilling to reduce the lien he would proceed to trial. Accordingly, the hearing panel concludes that the respondent violated KRPC 4.1(a) by making false statements in the voice mail message, in the electronic mail message, and during the telephone conversation with Ms. Williams.

KRPC 8.4(c)

"24.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when he made false statements in the voice mail message, the electronic mail message, and during a telephone conversation. The respondent made false statements when he stated (1) the settlement offer had an expiration date on it, (2) J.M. was not willing to accept anything prior to knowing what the lien would be, (3) the settlement was a 'proposed settlement,' (4) he was reducing his attorney fees from 40% to 25%, (5) if Sapp Bros. was unwilling to reduce the lien he would settle the case and interplead the funds, and (6) if Sapp Bros. was unwilling to

6

reduce the lien he would proceed to trial. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c) when he made false statements in the voice mail message, in the electronic mail message, and during the telephone conversation with Ms. Williams.

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"25.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"26.     *Duty Violated*. The respondent violated his duty to the public and the legal profession to maintain his personal integrity.

"27.     *Mental State*. The respondent knowingly violated his duties.

"28.     *Injury*.  As a result of the respondent's misconduct, the respondent may have caused injury to his client as the lien holder stopped negotiating after learning that the respondent was not negotiating in good faith. Further, the respondent caused actual injury to the reputation of the legal procession by making false statements.

"Aggravating and Mitigating Factors

"29.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found no aggravating factors present.

7

"30.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"31.     *Absence of a Prior Disciplinary Record.* The respondent has not previously been disciplined.

"32.     *Absence of a Dishonest or Selfish Motive.* While the respondent engaged in dishonest conduct, the respondent's motivation for the misconduct does not appear to be based on dishonesty or selfishness. The respondent's explanation for his misconduct at the hearing was two-fold—the respondent testified that he may have been frustrated with the lien holder or he may have been trying to help his client.

"33.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process, the respondent admitted the facts that gave rise to the violations, and the respondent admitted that his conduct violated KRPC 4.1(a) and KRPC 8.4(c).

34.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent is an active and productive member of the bar of Kansas City, Missouri. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"35.     *Remorse.* At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"36.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.13   Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"37.    In this case, the disciplinary administrator recommended that the respondent be suspended for a period of 3 months and the respondent argued that the appropriate discipline is censure to be published in the Kansas Reports. Clearly, the recommendations of both parties are supported by the ABA Standards, listed above.

"38.    The hearing panel has carefully considered the discipline to recommend in this case. The hearing panel is cognizant of the serious nature of the respondent's misconduct—the respondent engaged in dishonest conduct. Likewise, the hearing panel recognizes that the respondent's misconduct appears to be out of character.

"39.    The hearing panel had the opportunity to observe the respondent during his testimony. The respondent expressed genuine remorse for having engaged in the misconduct. The respondent fully and freely acknowledged his wrongdoing. The hearing panel is convinced that the respondent understands and takes full responsibility for having engaged in the misconduct. Further, the hearing panel is persuaded by the extensive mitigating factors and notes the absence of aggravating factors.

"40.    The hearing panel concludes that it is unlikely that the respondent will repeat the misconduct. The hearing panel concludes, therefore, that censure is the appropriate discipline to recommend to the Court. The hearing panel has not, however,

9

reached a unanimous decision as to the form of the censure. A majority of the hearing panel concludes that nothing can be gained by publishing the censure in the Kansas Reports and, therefore, recommends that the Court censure the respondent in an unpublished decision. Accordingly, a majority of the hearing panel recommends that the Court censure the respondent in an unpublished decision.

"41.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator.

. . . .

"CONCURRING AND DISSENTING OPINION

"43.    I concur in the findings of fact and the conclusions of law. I also concur that the appropriate discipline in this case is censure. However, I recommend that the censure be published in the Kansas Reports. It is important for the public and bar to know of the respondent's conduct and that consequences to the respondent flowed from the misconduct. Issuing an unpublished decision would send a message to the public and to the bar that the respondent's conduct was insignificant. Accordingly, I recommend that the Court censure the respondent and the censure be published in the Kansas Reports."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

10

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2013 Kan. Ct. R. Annot. 375).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 4.1 (2013 Kan. Ct. R. Annot. 617) (truthfulness in statements to others); and 8.4(c) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct involving misrepresentation), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be suspended for a period of 3 months. The respondent argued that published censure is the appropriate discipline. The hearing panel recommended that the respondent be censured in an unpublished decision; a minority of the panel recommended published censure.

This court is not bound by the recommendations of the Disciplinary Administrator or the hearing panel. *In re Mintz*, 298 Kan. 897, 911-12, 317 P.3d 756 (2014). The court bases each disciplinary sanction on the specific facts and circumstances of the violations and aggravating and mitigating circumstances presented in the case. 298 Kan. at 912. While we understand the basis of the hearing panel's recommendation of unpublished censure, we agree with the Disciplinary Administrator's recommendation and find that due to the serious nature of the dishonest conduct that the respondent stipulated to, suspension is appropriate in this case. However, we find a period of 1 month rather than

11

the 3 months as suggested by the Disciplinary Administrator to be an adequate period of time in this case. A minority of the court would issue a published censure.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Peter Edward Goss be suspended for 1 month from the practice of law in the state of Kansas effective on the filing of this opinion in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. C. R. Annot. 300).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 112,059 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.